UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLACK MOUNTAIN EQUITIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> PACIFIC GOLD CORP., <br><br> Defendant. | Docket No. <br><br> COMPLAINT |

Plaintiff Black Mountain Equities, Inc. ("BME"), by its attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for its Complaint states:

INTRODUCTION

1. On February 22, 2012, BME made a cashless exercise of warrants issued by Defendant Pacific Gold Corp. ("PGC") by properly delivering its Exercise Notice. Pursuant to the Exercise Notice, BME was entitled to at least 44,509,090 shares of PGC common stock. PGC has refused to honor the Exercise Notice, refusing to deliver even a single share to BME.

PARTIES

2. Plaintiff Black Mountain Equities, Inc. ("BME") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in San Diego, CA 92129.

3. Upon information and belief, Defendant Pacific Gold Corp. ("PGC") is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 848 N. Rainbow Blvd. #2987, Las Vegas, Nevada 89107.

1571414-1

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a) because the Warrant provides that "[e]ach party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in Hudson County and the United States District Court for the District of New Jersey, for the adjudication of any dispute hereunder or in connection herewith or therewith, or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper." Additionally, the Warrant provides that "questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New Jersey, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New Jersey or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the state of New Jersey."

## FACTUAL BACKGROUND

### The Warrant

6. On February 26, 2007, PGC entered into a Securities Purchase Agreement with Cornell Capital Partners LP (now known as YA Global Investments ("YAG")) for the sale of up to $2,440,000 principal amount of convertible debentures and warrants to purchase 6,000,000 shares of common stock. Pursuant to the Securities Purchase Agreement, PGC issued to YAG a

Warrant to Purchase Common Stock dated February 26, 2007 (the "Warrant"). The Expiration Date of the Warrant was February 26, 2012.

7. On February 14, 2012, BME purchased the Warrant from YAG. The Warrant allowed BME to subscribe for and purchase from PGC up to six million (6,000,000) shares of PGC common stock upon submission of an Exercise Notice.

8. The Warrant contained an initial Exercise Price of $0.216, subject to adjustment.

9. In Section 8 of the Warrant, PGC agreed that the initial Exercise Price of the Warrant was subject to downward adjustment in the event PGC thereafter issued shares, or securities convertible into shares, at a price that was lower than the initial Exercise Price.

10. Thus, the Warrant provided, in relevant part:

> If and whenever the Company issues or sells, or is deemed to have issued or sold, any shares of Common Stock (other than Excluded Securities) for a consideration per share less than a price (the "Applicable Price") equal to the Warrant Exercise Price in effect immediately prior to such issuance or sale, then immediately after such issue or sale the Warrant Exercise Price then in effect shall be reduce to an amount equal to such consideration per share. Upon each such adjustment of the Warrant Exercise Price hereunder, the number of Warrant Shares issuable upon exercise of this Warrant shall be adjusted to the number of shares determined by multiplying the Warrant Exercise Price in effect immediately prior to such adjustment by the number of Warrant Shares issuable upon exercise of this Warrant immediately prior to such adjustment and dividing the product thereof by the Warrant Exercise Price resulting from such adjustment.

(Warrant Section 8(a).)

11. PGC was also required to notify holders promptly of any event which required a downward modification of the exercise price and a commensurate increase in the number of shares covered by the Warrant.

12. Thus, the Warrant provided, in relevant part:

> Immediately upon any adjustment of the Warrant Exercise Price, the Company will give written notice thereof to the holder of this Warrant,

3

1571414-1

    setting forth in reasonable detail, and certifying, the calculation of such adjustment.

(Warrant Section 8(g).)

<u>The Securities Issuance Giving Rise to an Adjustment to the Warrant's Exercise Price</u>

  13. According to a Form 10-K filed by PGC for the fiscal year ended December 31, 2008, during the fourth quarter of 2008, "upon conversion of outstanding promissory notes, Pacific Gold issued from time to time an aggregate of 9,189,250 shares of common stock at a conversion price ranging between $0.0042 to $0.0099 in transactions qualifying under Section 4(2) of the Securities Act to accredited investors."

  14. Although obligated to do so, PGC did not provide to BME or its predecessor the required notice and calculation of the reduction in the Exercise Price caused by any of the above issuances.

  15. Also according to the 2008 Form 10-K, on October 5, 2007, PGC sold $450,000 in principal amount of discounted convertible debentures and a warrant to purchase common stock for an aggregate payment to PGC of $300,000. The initial conversion price of the debentures was $0.18 per share. The Form 10-K also stated that in 2008, PGC adjusted the conversion price to $0.0099.

  16. Pursuant to Section 8(a) of the Warrant, this adjustment of the conversion price of the debentures automatically adjusted the exercise price of the Warrant downward to, at most, $0.0099.

BME's Exercise Notice

17. On February 22, 2012, BME made a cashless exercise of its warrants, properly delivering its Exercise Notice to PGC. Pursuant to the Exercise Notice, BME was entitled to receive at least 44,509,090 shares of PGC common stock, based on the adjusted exercise price of $0.0099.

18. By letter dated February 23, 2012, PGC rejected BME's Exercise Notice, stating that PGC would not deliver any shares.

## FIRST CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Preliminary and Permanent Injunction)

19. Plaintiff repeats the allegations in paragraphs 1 to 18 above.

20. Pursuant to the Warrant, PGC is obligated to deliver to BME at least 44,509,090 shares of its common stock.

21. Despite its obligation to do so, PGC has failed and refused to deliver said shares of stock to BME.

22. As a result of such refusal by PGC, BME has suffered damages.

23. BME has no adequate remedy at law.

24. In the absence of injunctive relief, BME will suffer irreparable harm.

25. BME requests, therefore, that the Court enter an order requiring PGC to deliver immediately at least 44,509,090 shares of its common stock to BME.

## SECOND CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Damages)

26. Plaintiff repeats the allegations in paragraphs 1 to 25 above.

27. BME, therefore, seeks an award of damages in an amount to be determined at trial, but estimated to exceed the sum of $445,090.90.

## THIRD CAUSE OF ACTION
(Failure to Provide Notice of Reduction of Exercise Price - Relief Sought: Damages)

28. Plaintiff repeats the allegations in paragraphs 1 to 27 above.

29. Although obligated to do so pursuant to the Warrant and the Securities Purchase Agreement, PGC failed to provide the notices and related calculations of the reduction in the Exercise Price of BME's securities.

30. As a result of such failure, BME has suffered damages.

31. BME, therefore, seeks an award of damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that the Court award the following relief:

A. On the First Cause of Action, BME requests an order requiring PGC to deliver immediately at least 44,509,090 shares of its common stock to BME;

B. On the Second and Third Causes of Action, for damages in an amount to be determined at trial, but estimated to exceed the sum of $445,090.90;

C. On all claims for relief, for interest, attorneys fees, and the costs and disbursements of this action; and

D. An award to Plaintiff of such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 1, 2012

                                 OLSHAN GRUNDMAN FROME
                                 ROSENZWEIG & WOLOSKY LLP

                                 By: _____
                                     Jennifer L. Heil  (JH-4290)
                                     *Attorneys for Plaintiff Black Mountain*
                                     *Equities, Inc.*
                                   Park Avenue Tower
                                   65 East 55th Street
                                   New York, New York 10022
                                   (212) 451-2300
                                   jheil@olshanlaw.com

1571414-1