# OLSHAN

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212.451.2399
EMAIL: JHEIL@OLSHANLAW.COM

April 5, 2012

BY FACSIMILE AND UPS

Hon. Esther Salas
United States District Court
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101
Fax: (973) 645-2469

   Re: *Black Mountain Equities, Inc. v. Pacific Gold Corp.*,
     Docket No. 2:12-cv-01285-ES-CLW

Dear Judge Salas:

  We are counsel to Plaintiff Black Mountain Equities, Inc. ("BME"). We are writing to request the Court's permission to file a motion for preliminary injunction and preliminary declarative relief pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2201 in time for the May 7, 2012 Motion Day.

  As set forth below, injunctive relief is urgently required, directing Defendant Pacific Gold Corp. ("PCFG") to deliver to BME at least 44,509,090 shares of its common stock. These shares are owed pursuant to the terms of the Warrant (the "Warrant") exercised by BME in February 2012. BME also seeks an order compelling PCFG to respond immediately to an interrogatory seeking information relating to sales and issuances of PCFG stock since February

1607216-2

26, 2007, which information is crucial to ascertain the correct number shares due under the Warrant.

### The Warrant

BME holds a Warrant originally issued by Defendant PCFG on February 26, 2007 to Cornell Capital Partners, now known as YA Global Investments ("YA Global"). The Warrant permits the holder, BME, to subscribe for and purchase up to six million (6,000,000) shares of PCFG common stock at an initial Exercise Price of $0.216, subject to adjustment. In Section 8 of the Warrant, PCFG agreed that the Exercise Price was subject to downward adjustment to maintain parity with any later issuance of shares, or securities convertible into shares, at prices below $0.216. (Warrant Section 8(a).) PCFG was also required to notify BME of any event that required a downward modification of the exercise price (Warrant Section 8(g).)

### The Adjustment to the Warrant's Exercise Price

Since 2007, PCFG has made numerous issuances of stock and convertible debt at prices below $0.216, without notice to BME or its predecessor, YA Global.

According to PCFG's SEC Form 10-K for 2008, "upon conversion of outstanding promissory notes, Pacific Gold issued from time to time an aggregate of 9,189,250 shares of common stock at a conversion price ranging between $0.0042 to $0.0099," during the fourth quarter of 2008. PCFG did not provide BME or its predecessor the required notice and calculation of the reduction in the Warrant's Exercise Price for any of these issuances.

Also according to the same Form 10-K, on October 5, 2007, PCFG sold $450,000 in convertible debentures to Crescent International, Ltd. (the "Crescent Debenture"). The initial conversion price of the Crescent Debenture was $0.18 per share. Defendant's Form 10-K states that PCFG later adjusted the conversion price to $0.0099. Pursuant to Section 8(a) of the

1607216-2

April 5, 2012
Page 3

Warrant, this adjustment automatically adjusted the exercise price of the Warrant downward to, at most, $0.0099.

### BME's Exercise Notice

On February 22, 2012, BME made a cashless exercise of its Warrant, properly delivering its Exercise Notice to PCFG. Pursuant to the Exercise Notice, BME was entitled to receive at least 44,509,090 shares of PCFG common stock, based on the adjusted exercise price of $0.0099. By letter dated February 23, 2012, PCFG rejected BME's Exercise Notice, stating that PCFG would not deliver any shares. PCFG has resisted adjustment based on a side letter that YA Global signed when PCFG issued the Crescent Debenture. While the side letter states that the issuance of the Crescent Debenture at a lower price will not trigger an adjustment to the Warrant, it also provides:

> For purposes of this agreement, if the Crescent Debenture conversion rate or the Crescent Warrant exercise price is adjusted then the exercise price of the YA Global Warrant shall ... be adjusted pursuant to section 8 ...

When the Crescent Debenture adjusted to $0.0099, it triggered therefore a reciprocal adjustment to the Warrant.

### Argument

To prevail on a motion for a preliminary injunction, the moving party must prove "that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir.2006) (quoting *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004)).

1607216-2

A.   BME is Likely to Succeed on the Merits

In the event PCFG issued any shares, or any securities convertible into shares, at a price lower than the Exercise Price of the Warrant held by BME, PCFG was obligated i) to lower the Exercise Price of the Warrant to such new lower price; and ii) to increase the number of shares covered by the Warrant in accordance with an agreed upon formula.

PCFG's own SEC filings confirm multiple issuances of shares at prices far below the initial exercise price ($0.216). The Crescent Debenture adjusted to $0.0099. The side letter signed by PCFG and YA Global at the time is crystal clear that later adjustments to the Crescent Debenture will require adjustment to the Warrant. Independent of the Crescent Debenture, PCFG has made numerous other issuances that would also require adjustment to the Warrant. BME, therefore, has an overwhelming likelihood of success on the merits of its claims.

B.   BME Will Suffer Irreparable Harm if Preliminary Injunctive Relief Is Not Granted

Absent an award of the requested preliminary injunctive relief, BME will suffer irreparable harm. PCFG is insolvent. It has never earned a profit and does not anticipate any significant revenues in the foreseeable future. BME, therefore, is highly unlikely to recover on any damages award at the end of this case. Those factors constitute irreparable harm warranting an award of the requested preliminary injunctive relief.

Federal courts have consistently held that the "irreparable harm" requirement for preliminary injunctive and declaratory relief is met where, as here, the movant has demonstrated (i) a contractual right to receive payment in the form of securities and (ii) any potential monetary judgment may well be uncollectible. *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 2003 WL 328302, (S.D.N.Y., Feb. 11, 2003.); *Castle Creek Technology Partners, LLC v. CellPoint Inc.*, 2002 WL 31958696, (S.D.N.Y. Dec. 9, 2002); *Alpha Capital*

1607216-2

April 5, 2012
Page 5

*Aktiengesellschaft v. Group Management Corp.*, 2002 WL 31681798, (S.D.N.Y. Nov. 25, 2002); *Alpha Capital Inc. v. Advanced Cell*, S.D.N.Y. Dkt. No. 09 CV 670 (LAK)\*; *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, S.D.N.Y. Dkt. No. 11 Civ. 6458 (PAC)\*; *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.*, S.D.N.Y. Dkt. No. 01 Civ. 91 (CBM)\*; *Longview Special Finance v. Infinium Labs, Inc.*, S.D.N.Y. Dkt. No. 06 Civ. 1772\*; *see also Cranshire Capital Master Fund, Ltd. v. Advanced Cell Technology, Inc.*, S.D.N.Y. Dkt. No. 11 Civ. 7855 (DLC)\*.

PCFG, according to its public filings, is engaged in the identification, acquisition, and development of prospects believed to have gold mineralization, and owns certain mining claims, property, and leases in Nevada and Colorado. Its most recent financial statements reveal total revenue of $71,019.00 for the nine months ended September 30, 2011 with operating expenses of $389,041.00, with a net loss for the same period of $726,467.00. (PCFG Form 10-Q for the Quarterly Period ended September 30, 2011 at 5). PCFG disclosed that "[a]s of September 30, 2011, the Company had an accumulated deficit of ($26,529,372) negative working capital of ($1,400,755) and negative cash flows from operations of ($670,800) raising substantial doubt about its ability to continue as a going concern." (PCFG Form 10-Q for the Quarterly Period ended September 30, 2011 at 12).

There is significant doubt that PCFG will be able to continue as a going concern. Indeed, PCFG has stated:

> Our independent auditors, in their report on the financial statements, have indicated that the Company has experienced recurring losses from operations and may not have enough cash and working capital to fund its operations beyond the very near term, which raises substantial doubt about our ability to continue as a going concern.

---

\* We attach as exhibits copies of these unpublished decisions.

1607216-2

April 5, 2012
Page 6

(PCFG Form 10-Q for the Quarterly Period ended September 30, 2011 at 16). Thus, it is unlikely that PCFG can pay any likely damages award at the end of a lengthy litigation.

PCFG should not be permitted to claim that BME should be compelled to wait until the end of this litigation to obtain a judgment which must then be satisfied from PCFG's assets, if any, when it is possible that PCFG will cease to exist as an operating entity before then.

Under the facts and circumstances of this case, there is no reasonable possibility that PCFG will suffer any monetary damages as a result of being compelled to comply with its contractual obligations. There is no likely possibility that PCFG will suffer any harm if the injunction is granted and BME obtains the stock to which it is entitled. The Court, therefore, should dispense with any bond requirement that PCFG may suggest.

    C.    <u>Immediate Limited Expedited Discovery Is Appropriate</u>

BME also seeks an immediate order compelling PCFG to respond to an interrogatory seeking information relating to sales and issuances of PCFG stock since February 26, 2007, which information PCFG was contractually obligated, but failed, to provide to BME or its predecessor. As this information is crucial to ascertain the correct number shares due under the Warrant, BME requires this information prior to submitting its opening brief to the Court on the motion. The specific interrogatory requested by BME is as follows:

> Please identify each sale or issuance of PCFG securities, including stock issued upon any conversion or exercise of any convertible securities or exercisable warrants, between February 26, 2007 and September 3, 2009, including any terms applicable thereto and the price at which such securities were sold or issued and the price at which they can be converted or exercised.

BME therefore respectfully requests that the Court issue an order compelling PCFG to respond to the above interrogatory on or before April 12, 2012, so as to give BME the opportunity to

1607216-2

review such response prior to April 13, 2012, the proposed date for BME's opening brief on the motion preliminary injunction and preliminary declaratory relief.

## Conclusion

BME therefore respectfully requests permission from the Court to file a motion for preliminary injunction and preliminary declarative relief against PCFG pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2201 in time for the May 7, 2012 Motion Day and for the Court to issue an immediate order compelling PCFG to respond to an interrogatory as set forth above.

Respectfully submitted,

*[signature]*

Jennifer L. Heil

cc: Andrew Hudders, Esq. (by facsimile and email)
Golenbock Eiseman Assor Bell & Peskoe
437 Madison Avenue - 40th Floor
New York, New York 10022
*Attorneys for Defendant Pacific Gold Corp.*

1607216-2