UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLACK MOUNTAIN EQUITIES, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>PACIFIC GOLD CORP.,<br><br>Defendant. | Docket No. 2:12-cv-01285-ES-CLW |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

OLSHAN GRUNDMAN FROME ROSENZWEIG
& WOLOSKY LLP
Thomas J. Fleming (admitted *pro hac vice*)
Jennifer L. Heil (JH 4290)
*Attorneys for Plaintiff Black Mountain Equities, Inc.*
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451-2300
jheil@olshanlaw.com

1635164-1

Table of Contents

Page

Preliminary Statement....................................................................................................................1

Statement of Facts..........................................................................................................................3

    The Parties ...............................................................................................................................3

    The Warrant .............................................................................................................................3

    The Crescent Issuance.............................................................................................................5

    Black Mountain's Exercise Notice .........................................................................................5

    The October 5, 2007 Letter.....................................................................................................6

    The Shares Due to Black Mountain .......................................................................................7

Argument .......................................................................................................................................8

I        THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION IN
            FAVOR OF PLAINTIFF...........................................................................................8

    A.     The Standard for the Issuance of a Preliminary Injunction .........................8

    B.     Black Mountain's Likelihood of Success on the Merits is
            Overwhelming...............................................................................................8

    C.     Black Mountain Will Suffer Irreparable Harm if Preliminary
            Injunctive Relief Is Not Granted.................................................................10

           1.     PCFG Is Unlikely To Be Able To Satisfy A Money
                 Damages Award...............................................................................10

           2.     Courts Have Consistently Granted Preliminary Injunctive
                 Relief to Require Financially Troubled Defendants to
                 Deliver Securities............................................................................11

    D.     Black Mountain Should Not Be Required to Post a Bond.........................16

Conclusion ...................................................................................................................................17

## Table of Authorities

Page

### CASES

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research*,
No. 02 CV 10237(GBD), 2003 WL 328302 (S.D.N.Y. Feb 11, 2003) .............................12, 14

*Alpha Capital Aktiengesellschaft v. Group Management Corp.*,
02 Civ. 2219 (LBS), 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) ...............................12, 13

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*,
09 Civ. 670 (LAK) (S.D.N.Y. Feb. 10, 2009) .........................................................................12

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,*
11 Civ. 6458 (PAC) (S.D.N.Y. Oct. 14. 2011)........................................................................11

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*,
S.D.N.Y. 09 Civ. 670 (LAK)...................................................................................................12

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*,
S.D.N.Y. 11 Civ. 6458 (PAC) .................................................................................................13

*Black Mountain Equities, Inc. v. Advanced Cell Technology, Inc.*,
11 Civ. 07305 (PAE) (S.D.N.Y. Nov. 10, 2011) .....................................................................11

*Castle Creek Technology Partners, LLC v. CellPoint Inc.*,
No. 02 Civ. 6662(GEL), 2002 WL 31958696 (S.D.N.Y. Dec. 9, 2002) ..................................12

*Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology,*
*Inc.*, 01 Civ. 91 (S.D.N.Y. Jan 12, 2001)...........................................................................12, 13

*Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist.*,
386 F.3d 514 (3d Cir. 2004)......................................................................................................8

*Deckert v. Independent Shares Corp.*,
311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)...................................................................15

*Doctor's Associates v. Stuart*,
85 F.3d 975 (2d Cir. 1996)......................................................................................................16

*Fleet National Bank v. Trans World Airlines*,
767 F. Supp. 510 (S.D.N.Y. 1991) ..........................................................................................16

*Foltz v. U.S. News & World Report*,
760 F.2d 1300 (D.C.Cir.1985)................................................................................................15

Table of Authorities
(continued)

Page

*Gerardi v. Pelullo*,
16 F.3d 1363 (3d Cir. 1994)......................................................................................................14

*Gleason v. Norwest Mortgage, Inc.*,
243 F.3d 130 (3d Cir. 2001)....................................................................................................8, 9

*Hardy ex rel. Dowdell v. Abdul–Matin*,
198 N.J. 95, 965 A.2d 1165 (2009)............................................................................................8

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
903 F.2d 186 (3d Cir. 1990)....................................................................................................15

*In re Feit & Drexler, Inc.*,
760 F.2d 406 (2d Cir.1985)......................................................................................................15

*International Controls Corp. v. Vesco*,
490 F.2d 1334 (2d Cir. 1974) *cert. denied*, 94 S. Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d
236 (1974).................................................................................................................................16

*Kamine/Besicorp. Allegany L.P. v. Rochester Gas & Electric Corp.*,
908 F. Supp. 1180 (W.D.N.Y. 1995).......................................................................................16

*La Plaza Defense League v. Kemp*,
742 F. Supp. 792 (S.D.N.Y. 1990) ..........................................................................................16

*Longview Special Finance v. Infinium Labs, Inc.*,
06 Civ. 1772 (RJH) (Nov. 29, 2006) ..................................................................................12, 14

*Nutrasweet Co. v. Vit-Mar Enters.*,
176 F.3d 151 (3d Cir. 1999).......................................................................................................8

*Rogers v. Corbett*,
468 F.3d 188 (3d Cir. 2006).......................................................................................................8

*Roland Machinery Co. v. Dresser Industries*,
749 F.2d 380 (7th Cir.1984) ....................................................................................................15

*Spano v. JP Morgan Chase Bank, N.A.*,
2:09-CV-04055 DMC, 2011 WL 6934837 (D.N.J. Dec. 30, 2011) ...........................................9

*State Troopers Fraternal Ass'n of N.J. v. State*,
149 N.J. 38, 692 A.2d 519 (1997).............................................................................................8

*Teradyne, Inc. v. Mostek Corp.*,
797 F.2d 43 (1st Cir.1986).......................................................................................................15

iii

## Table of Authorities
(continued)

Page

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
594 F.3d 238 (3d Cir. 2010).................................................................................................8, 9

*United Steelworkers v. Fort Pitt Steel Casting*,
598 F.2d 1273 (3d Cir.1979)...................................................................................................15

### OTHER AUTHORITIES

Fed. R. Civ. P. 65.......................................................................................................................1, 16

Thomas J. Fleming (admitted *pro hac vice*)
Jennifer L. Heil (JH 4290)
OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
*Attorneys for Plaintiff Black Mountain Equities, Inc.*
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451-2300
jheil@olshanlaw.com

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BLACK MOUNTAIN EQUITIES, INC., | Docket No. 2:12-cv-01285-ES-CLW |
| Plaintiff, | |
| -against- | |
| PACIFIC GOLD CORP., | |
| Defendant. | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
### OF ITS MOTION FOR A PRELIMINARY INJUNCTION

This memorandum of law is submitted by plaintiff Black Mountain Equities, Inc. ("Black

Mountain") in support of its motion under Fed. R. Civ. P. 65 for a preliminary injunction against

defendant Pacific Gold Corp. ("PCFG"). Black Mountain seeks an order, pending final

determination of this action, directing PCFG to deliver immediately 44,509,090 shares of its

common stock owed pursuant to the terms of the Warrant to Purchase Common Stock (the

"Warrant") exercised by Black Mountain in March 2012.

### Preliminary Statement

In February 2012, plaintiff Black Mountain exercised a Warrant, dated February 26,

2007, issued by defendant Pacific Gold Corp. ("PCFG"). As a result of the exercise, plaintiff

became entitled to receive approximately 44.5 million shares of PCFG common stock. PCFG has refused to deliver the shares. There can be no dispute that, under the plain terms of the Warrant, adjustments to both the exercise price and the number of shares occurred based on PCFG's issuance of stock to another investor, Crescent International, Ltd. ("Crescent") at $.0099 per share. Indeed, PCFG apparently does not challenge the wording or operation of the Warrant. Instead, it contends that a side letter executed when Crescent made its loan on October 5, 2007 (the "October 5 Letter") provides an exemption for the later issuances to Crescent at $.0099 per share. The October 5 Letter is clear, however, that any exemption applies only to the issuances under the Crescent loan "upon the terms as originally issued on the date hereof." The Crescent loan's conversion rate "as originally issued" was $0.18 per share. To cut short the very arguments now made by PCFG, the October 5 Letter adds that any adjustment to the conversion rate in the Crescent Debenture will result in a corresponding adjustment to the exercise price of the Warrant, stating that "if the Crescent Debenture conversion rate ... is adjusted then the exercise price of [the Warrant] ... shall ... be adjusted pursuant to Section 8 [of the Warrant]...."

PCFG's SEC filings and discovery in this case confirm that the conversion rate for the Crescent Debenture, namely the price attributed to shares issued to Crescent as payment, indeed adjusted in late 2008, down to $.0099 per share. The reduction from $.18 to $.0099 caused massive dilution to all PCFG investors, including the holder of the Warrant. As a protection against such dilution, the Warrant requires a corresponding adjustment to its exercise price. PCFG is mistaken in relying upon the October 5 Letter for an exemption.

Preliminary injunctive relief is urgently required based on plaintiff's clear likelihood of success on the merits and the inadequacy of a money damage remedy. PCFG's financial condition is bleak. Its liabilities far exceed its assets. For many years, PCFG has suffered large

2

losses and today its ordinary expenses far exceed its revenue. PCFG shares trade at approximately $.01. Absent an injunction directing the issuance of shares to Black Mountain, there is little prospect that Black Mountain will be able to recover on any money damage award. Plaintiff is providing the Court with a compendium of cases cited in this brief granting preliminary injunctive relief under identical circumstances.

Statement of Facts

The facts set forth below are based on the accompanying Declarations of Adam Baker, dated April 27, 2012, and Thomas J. Fleming, dated April 27, 2012, and the exhibits annexed to these declarations.

### The Parties

Plaintiff Black Mountain is a California corporation with its principal place of business in San Diego, CA 92129. Black Mountain invests in startups, distressed and other equity opportunities. (Baker Dec. ¶ 2)

Defendant PCFG is a Nevada corporation with its principal place of business in Las Vegas, Nevada 89107. PCFG, according to its public filings, is engaged in the identification, acquisition, and development of prospects believed to have gold mineralization, and owns certain mining claims, property, and leases in Nevada and Colorado. PCFG's shares trade in the NASDAQ "pink sheets, under the symbol "PCFG." Its shares now trade at approximately $.01. According to its most recent annual filing with the SEC there are approximately 837 million shares outstanding. (Baker Dec. ¶ 3)

### The Warrant

On February 26, 2007, PCFG entered into a Securities Purchase Agreement with Cornell Capital Partners LP (now known as YA Global Investments L.P. ("YAG" or "YA Global")) for the sale of up to $2,440,000 principal amount of convertible debentures and warrants to purchase

3

6,000,000 shares of common stock. (Fleming Dec. Ex. 14) Pursuant to the Securities Purchase

Agreement, PCFG issued to YAG a Warrant to Purchase Common Stock dated February 26,

2007 (the "Warrant" or the "YAG Warrant"). The Expiration Date of the Warrant was February

26, 2012.

On February 14, 2012, Black Mountain purchased the Warrant from YAG. (Baker Dec.

Ex. 2) The Warrant allowed Black Mountain to subscribe for and purchase from PCFG up to six

million (6,000,000) shares of PCFG common stock, subject to adjustments, upon submission of

an Exercise Notice. The Warrant contained an initial Exercise Price of $0.216, which is also

subject to adjustment. (Baker Dec. Ex. 1)

In Section 8(a) of the Warrant, PCFG agreed that the initial Exercise Price of the Warrant

was subject to downward adjustment in the event PCFG later issued shares, or securities

convertible into shares, at a price that was lower than the then Exercise Price. Thus, the Warrant

provides, in relevant part:

> If and whenever the Company issues or sells, or is deemed to have issued
> or sold, any shares of Common Stock (other than Excluded Securities) for
> a consideration per share less than a price (the "Applicable Price") equal
> to the Warrant Exercise Price in effect immediately prior to such issuance
> or sale, then immediately after such issue or sale the Warrant Exercise
> Price then in effect shall be reduced to an amount equal to such
> consideration per share.

(Baker Dec. Ex. 1, § 8(a).)

The Warrant also provided that, as the exercise price adjusted, the number of shares to be

issued would also change. Section 8(a) further provides:

> Upon each such adjustment of the Warrant Exercise Price hereunder, the
> number of Warrant Shares issuable upon exercise of this Warrant shall be
> adjusted to the number of shares determined by multiplying the Warrant
> Exercise Price in effect immediately prior to such adjustment by the
> number of Warrant Shares issuable upon exercise of this Warrant
> immediately prior to such adjustment and dividing the product thereof by
> the Warrant Exercise Price resulting from such adjustment.

4

(*Id.*)

### The Crescent Issuance

In October 2007, PCFG obtained financing from Crescent International, Ltd. ("Crescent"). (Baker Dec. ¶ 8, Ex. 4) Crescent received a convertible note (the "Crescent Debenture" or the "Debenture"), at an initial exercise price of $0.18 per share, subject to adjustment under a variety of scenarios. (*Id.* Exs. 5 & 6) In late 2008 and early 2009, PCFG issued approximately 8,080,000 shares to Crescent pursuant to the Debenture, at $.0099 per share. (Fleming Dec. Ex. 12) Crescent's 2008 Form 10-K disclosed that "[d]uring 2008 the conversion price [of the Crescent Debenture] was readjusted to $0.0099 and the note was revalued at this time," and also that "During the fourth quarter upon conversion of outstanding promissory notes, Pacific Gold issued from time to time an aggregate of 9,189,250 shares of common stock at a conversion price ranging between $0.0042 to $0.0099 . . ." (Baker Dec. Ex. 7)

### Black Mountain's Exercise Notice

Pursuant to Section 8(a) of the Warrant, the issuance of shares pursuant to the Crescent Debenture at $.0099 automatically adjusted the exercise price of the YA Warrant downward to $0.0099. (Baker Dec. ¶ 1)

On February 22, 2012, Black Mountain made a cashless exercise of its Warrant, properly delivering its Exercise Notice to PCFG. Pursuant to the Exercise Notice, Black Mountain was entitled to receive at least 44,509,090 shares of PCFG common stock, based on the adjusted exercise price of $0.0099. (Baker Dec. ¶ 11, Ex. 8)

By letter dated February 23, 2012, PCFG rejected Black Mountain's Exercise Notice, stating that PCFG would not deliver any shares. (Baker Dec. ¶ 12, Ex. 9)

5

1635164-1

The October 5, 2007 Letter

Based on PCFG's objections, it appears that the sole basis for rejecting Black Mountain's
Notice of Exercise is a side letter signed by YAG simultaneous with the Crescent investment in
October 2007. On October 5, 2007, PCFG and YAG entered into a Letter Agreement (the
"October 5 Letter") in which YAG consented to the Crescent investment and waived certain
rights under YAG's existing notes. (Baker Dec. Ex. 3) The October 5 Letter also addressed
present and future adjustments to the YAG Warrant and its Convertible Note.

In Section 4, the October 5 Letter provides that "upon consummation of the Crescent
Transaction, pursuant to the adjustment terms of that certain Warrant, dated as of February 26,
2007, issued to YA Global, (the "YA Global Warrant"), the exercise price of the YA Global
Warrant will be adjusted to $.18." In Section 9, the October 5 Letter further confirms that any
later adjustment to the exercise price of the Crescent Debenture would likewise result in
adjustments to the YAG Warrant:

> For purposes of this agreement, if the Crescent Debenture conversion rate
> . . . . is adjusted then the exercise price of the YA Global Warrant and the
> warrant issued on February 26, 2007 to YA Global on assignment from
> Palisades Master Fund shall each be adjusted pursuant to Section 8 and
> section 3(b), respectively, and the fixed conversion price of the YA Global
> Debenture, if it is not paid in full, will be adjusted pursuant to Section 5(a)
> of the YA Global Debenture to the extent such adjustment is below the
> exercise or conversion price of the YA Global Debenture or Warrants.

Notably, the October 5 Letter did not amend or void the adjustment provisions in Section 8 of the
Warrant, which would continue to operate in the event that PCFG thereafter issued shares, or
securities convertible into shares, at lower prices.

PCFG apparently relies on Section 5 of the October 5 Letter which provides:

> The Company and YA Global agree that for purposes of the YA Global
> Warrant, . . . the issuance of shares of Common Stock on conversion of the
> Crescent Debenture and exercise of the Crescent Warrant upon the terms
> as originally issued on the date hereof provided the terms are not changed

6

1635164-1

> after the date hereof will not cause any adjustment in the conversion rate
> of the YA Global Debentures.

(Baker Dec. Ex. 3 § 5) A similar provision addresses YAG's outstanding Note. (*Id.* at § 3)

Both Sections provide that later issuances under the Crescent Debenture, standing alone, will not

cause an adjustment to the YAG Warrant or its Note. However, Section 9 confirms that, if those

later issuances involve an adjustment to the Crescent Debenture conversion rate, then an

adjustment to the YAG Warrant under Section 8 is appropriate. Here, there is no dispute that the

Crescent Debenture conversion rate indeed adjusted from $.18 to $.0099 in late 2008.

### The Shares Due to Black Mountain

Under the terms of the Warrant, PCFG was contractually required to deliver at least

44,509,090 shares of its common stock upon Black Mountain's exercise of the Warrant on

February 22, 2012. These shares were due within five trading days, i.e., by February 29, 2012.

PCFG has not delivered any shares to Black Mountain.

The shares that PCFG was required to deliver had a market value of approximately

$890,000 based on the closing price of $.02 for PCFG shares on February 27, 2012, as reported

by Yahoo!Finance. (Fleming Dec. Ex. 11) There can be no doubt that PCFG lacks the funds to

honor any monetary award in this amount. As set forth at pages 11-13 below, PCFG is insolvent

under any standard. Its liabilities far exceed its assets; it has never earned a profit; it does not

anticipate any significant revenues in the foreseeable future. Black Mountain, therefore, is

highly unlikely to recover on any damages award at the end of this case. Those factors constitute

irreparable harm warranting an award of the requested preliminary injunctive relief.

7

1635164-1

Argument

I

## THE COURT SHOULD GRANT A PRELIMINARY
## INJUNCTION IN FAVOR OF PLAINTIFF

A.  The Standard for the Issuance of a Preliminary Injunction

To prevail on a motion for a preliminary injunction, the moving party must prove "that

(1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction

is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving

party, and (4) the public interest favors such relief." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d

Cir. 2006) (quoting *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist.*,

386 F.3d 514, 524 (3d Cir. 2004)). "A plaintiff's failure to establish any element in its favor

renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d

151, 153 (3d Cir. 1999).

B.  Black Mountain's Likelihood of Success on the Merits is Overwhelming

The YAG Warrant and October 5 letter are both contracts governed by New Jersey law.

Under New Jersey principles of contract construction, a court must "ascertain and give effect to

the intention of the parties as expressed in the agreement." *Gleason v. Norwest Mortgage, Inc.*,

243 F.3d 130, 140 (3d Cir. 2001). To this end, a court "must interpret the parties' contract

according to its plain language . . . by reading the document as a whole in a fair and common

sense manner" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 255 (3d Cir. 2010)

(internal quotations omitted) (citing *State Troopers Fraternal Ass'n of N.J. v. State*, 149 N.J. 38,

692 A.2d 519, 523 (1997) and *Hardy ex rel. Dowdell v. Abdul–Matin*, 198 N.J. 95, 965 A.2d

1165, 1169 (2009)). It is well established that "where the terms of a contract are clear and

unambiguous there is no room for interpretation or construction and courts must enforce those

8

terms as written." *Spano v. JP Morgan Chase Bank, N.A.*, 2:09-CV-04055 DMC, 2011 WL 6934837, at \*4 (D.N.J. Dec. 30, 2011).

There can be no dispute that under the Warrant an adjustment occurs to the exercise price if PCFG "issues... any shares of common stock... for a consideration per share... less than a price... equal to the Warrant Exercise Price...." (Baker Dec., Ex. 1 § 8) Through discovery, Black Mountain has confirmed that PCFG has issued approximately 8,080,000 shares to Crescent, pursuant to its Debenture, at \$.0099 per share. (Fleming Dec. Ex.12; Baker Dec. ¶¶ 9-10) Accordingly, under the plain meaning of the Warrant, an adjustment to the Warrant Exercise price is mandated, with a corresponding increase to the number of shares.

PCFG's reliance upon Section 5 of the October 5 Letter is misplaced. Section 5 states that later issuances under the Crescent Debenture "*upon the terms as originally issued on the date hereof*" do not cause an adjustment to the YAG Warrant. The Crescent Debenture conversion price "*as originally issued on the date hereof*" is \$0.18. Section 9 of the October 5 Letter makes crystal clear that any adjustments to the conversion price of the Crescent Debenture will result in a corresponding adjustment to the exercise price of the YAG Warrant. Section 9 of the October 5 letter states that "if the Crescent Debenture conversion rate... is adjusted then the exercise price of the [YAG Warrant] . . . *shall* . . . *be* adjusted pursuant to Section 8 [of the YAG Warrant]...." (emphasis added).

By relying only on Section 5 of the October 5 Letter, PCFG ignores Section 9 and indeed, renders this provision meaningless. Under New Jersey law, a court "must also endeavor to avoid ignoring certain words or reading the contract in such a way as to make any words 'meaningless.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d at 255; *see also Gleason v. Norwest Mortgage, Inc.*, 243 F.3d at 140 ("we construe the contract as a whole,

9

giving effect to every portion of the instrument, if possible, and utilizing that construction rendering the agreement legal rather than one which makes it void"). Contrary to the wishes of PCFG, the Court must enforce the plain meaning of Section 9 of the October 5 Letter. Accordingly, Black Mountain was entitled to exercise its warrant on February 22, 2012 at $.0099 per share and, upon that exercise, to receive 44,509,090 shares of PCFG common stock.

C.    Black Mountain Will Suffer Irreparable Harm if
      Preliminary Injunctive Relief Is Not Granted

Black Mountain will also meet the other requirements for a preliminary injunction --
irreparable harm absent the grant of the injunction.

1.    PCFG Is Unlikely To Be Able To Satisfy A Money Damages Award

Black Mountain will suffer irreparable harm because PCFG is unlikely to be able to satisfy any ultimate damages award at the end of the case. There can be no dispute about PCFG's dire financial condition. Its most recent financial statements reveal revenue of $121,401.00 for the year ended December 31, 2011, with production costs of $196,508 and operating expenses of $1,498,315.00, resulting in a net loss for the year of $1,721,904.00. (Fleming Aff., Ex. 10 at F-3, p. 30 of 66). PCFG disclosed that as of December 31, 2011, the Company "had an accumulated deficit of $27,185,182 negative working capital of $2,951,205 and negative cash flows from operations of $1,339,641 . . . " (*Id.* at p 53 of 66).

According to its most recent balance sheet, PCFG had a mere $103,454 in cash at December 31, 2011. (*Id.* at F-2, p. 29 of 66) Its assets totaled $1,821,184 and liabilities were $4,704,767. (*Id.*) By any definition of the term, PCFG is insolvent. PCFG admits that "[d]evelopment of commercially viable mineralization of any metal includes a high degree of risk which careful evaluation, experience and factual knowledge may not eliminate, and

10

1635164-1

therefore, we may never produce any significant revenues." (*Id.* at p. 4 of 66) PCFG has never

earned a profit.

There is significant doubt that PCFG will be able to continue as a going concern. Indeed,

PCFG has stated:

> Our independent auditors, in their report on the financial statements, have
> indicated that the Company has experienced recurring losses from
> operations and may not have enough cash and working capital to fund its
> operations beyond the very near term, which raises substantial doubt about
> our ability to continue as a going concern. Management has made a
> similar note in the financial statements. As indicated herein, we have need
> of capital for the implementation of our business plan, and we will need
> additional capital for continuing our operations. We do not have sufficient
> revenues to pay our expenses of operations. Unless the company is able to
> raise working capital, it is likely that the Company either will have to
> cease operations or substantially change its methods of operations or
> change its business plan.

(*Id.* at 25 of 66) Thus, it is unlikely that PCFG can pay any likely damages award at the end of a

lengthy litigation.

PCFG should not be permitted to claim that Black Mountain should be compelled to wait

until the end of this litigation to obtain a judgment which must then be satisfied from PCFG's

assets, if any, when it is unlikely that PCFG will have the assets to fulfill a judgment.

2. Courts Have Consistently Granted Preliminary Injunctive Relief to
Require Financially Troubled Defendants to Deliver Securities.

The "irreparable harm" requirement for preliminary injunctive relief is met where, as

here, the movant has demonstrated that, absent such relief, any potential monetary judgment is

likely uncollectible and the movant seeks to enforce a contractual right to receive securities that

may be sold to cover a later monetary award. A series of cases from the Second Circuit provide

compelling precedent for this relief.\* *See Black Mountain Equities, Inc. v. Advanced Cell*

*Technology, Inc.*, 11 Civ. 07305 (PAE) (S.D.N.Y. Nov. 10, 2011); *Alpha Capital Anstalt v.*

---

\* Plaintiff is providing the Court under separate cover with a compendium of these decisions.

1635164-1

*Advanced Cell Technology, Inc.,* 11 Civ. 6458 (PAC) (S.D.N.Y. Oct. 14. 2011); *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, 09 Civ. 670 (LAK) (S.D.N.Y. Feb. 10, 2009); *Longview Special Finance v. Infinium Labs, Inc.*, 06 Civ. 1772 (RJH) (Nov. 29, 2006); *Alpha Capital Aktiengesellschaft v. Advanced Viral Research*, No. 02 CV 10237(GBD), 2003 WL 328302, at *5 (S.D.N.Y. Feb 11, 2003); *Castle Creek Technology Partners, LLC v. CellPoint Inc.*, No. 02 Civ. 6662(GEL), 2002 WL 31958696, at *3 (S:D.N.Y. Dec. 9, 2002); *Alpha Capital Aktiengesellschaft v. Group Management Corp.*, 02 Civ. 2219 (LBS), 2002 WL 31681798 at * 11 (S.D.N.Y. Nov. 25, 2002); *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.*, 01 Civ. 91 (S.D.N.Y. Jan 12, 2001).

The decision in *Castle Creek, supra.*, is directly on point. There, the plaintiff sought a preliminary injunction compelling defendant Cellpoint to deliver approximately 1.6 million shares of Cellpoint common stock in connection with the conversion of a promissory note to common stock. The District Court granted the requested injunction, finding that defendant Cellpoint "if not currently insolvent, may become so in the near future." *Id.* at *4, *9. Cellpoint had recurring significant losses and was spending more money than it received through its operations. *Id.* at *4. In addition, as with PCFG, Cellpoint's accountants had expressed substantial doubt about the company's ability to continue as a going concern unless it obtained additional financing. *Id.* The Court also found that plaintiff Castle Creek had demonstrated a substantial likelihood that it would prevail on the merits of its claim. *Id.* at *5-*6. Moreover, as in this case, plaintiff sought to enforce a written agreement.

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, S.D.N.Y. 09 Civ. 670 (LAK), is also directly on point. There, plaintiffs, holders of warrants, sued the defendant corporation for failing to deliver shares of stock and moved for a preliminary injunction directing defendant

12

to deliver such shares. Judge Kaplan granted the requested preliminary injunctive relief and ordered the defendant to deliver the common stock to which plaintiff was entitled upon conversion of its convertible debenture. Judge Kaplan stated (Transcript p. 17): "It is quite clear that the plaintiff would have no adequate remedy at law in the absence of the preliminary injunction which I am now going to grant."

A second *Alpha Capital* decision, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, S.D.N.Y. 11 Civ. 6458 (PAC), is also on point. There, District Judge Crotty granted a preliminary injunction directing defendant to deliver 39,000,000 shares of its common stock. Judge Crotty specifically found that, based on a similar set of facts, found that money damages would not make the plaintiff whole in light of defendant's lack of revenue and assets. Judge Crotty also found that the plaintiff was substantially likely to prevail on the merits because it was clear that later transactions required a reduction in the exercise price to \$.035 per share. Judge Crotty also declined to order the plaintiff to post a bond in that case.

These three decisions are joined by many others. For example:

A. In *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.*, *supra.*, Judge Whitman Knapp granted a preliminary injunction directing the defendant in that case, pending final determination of the action, to honor its obligation to deliver securities in accordance with the terms of the convertible securities there at issue.

B. In *Alpha Capital Aktiengesellschaft et al v. Group Management Corp. et al.*, *supra*, plaintiffs moved, as here, for a preliminary injunction seeking, among other relief, an order directing the defendant therein to issue stock in accordance with its contractual obligation to do so contained in the securities there at issue. Defendant was also in precarious financial circumstances and unlikely to be able to respond to any ultimate award of damages. Judge Sand,

13

noting that defendant had entered into an agreement to issue the stock, granted the preliminary injunction and required the defendant to issue the shares to plaintiffs and to honor future conversion requests.

C.  In *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp., supra*, the court granted plaintiffs preliminary injunctive relief requiring Advanced Viral Research Corp. to issue stock to which plaintiffs were entitled upon exercise of their warrants. The Court specifically noted that there was nothing in the record to indicate that defendant could pay the likely judgment at the end of the case.

D.  In *Longview Special Finance v. Infinium Labs, Inc., supra.*, Judge Holwell granted a preliminary injunction requiring the defendant to comply with the terms of its convertible debentures and deliver the common stock for which a conversion notice had been submitted. Judge Holwell noted plaintiff's showing that the defendant, as here, was insolvent and likely could not pay money damages at the end of the litigation. He also observed:

> Compelling compliance rather than simply awarding damages reinforces the sanctity of bargains between corporations and creditors and investors and is consistent with the debenture holders' potential exercise of their rights as equity shareholders. (Transcript of hearing on November 29, 2006, p. 21)

Courts in this Circuit have also consistently recognized the propriety of injunctive relief where the moving party demonstrates that it will suffer irreparable harm caused by the unsatisfiability of a money judgment. For example, in *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994), the Third Circuit found that the District Court properly granted a preliminary injunction enjoining a corporation and its president from disposing of a $1,500,000 settlement obtained in a litigation, noting that "the district court ruled that absent an injunction the judgment probably would go unsatisfied in light of [the corporation's] insubstantial existence." The Third

14

Circuit's discussion on this issue in *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186,

205-06 (3d Cir. 1990), is particularly instructive:

> Appellants contend at the outset that the possibility of an unsatisfied
> money judgment cannot, as a matter of law, constitute irreparable injury
> for purposes of granting a preliminary injunction. We find ample authority
> to the contrary, however. *See, e.g., Deckert v. Independent Shares Corp.*,
> 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940) ("[T]here were
> allegations that [the defendant] was insolvent and its assets in danger of
> dissipation or depletion. This being so, the legal remedy against [the
> defendant], without recourse to the fund in the hands of [a third party],
> would be inadequate."); *United Steelworkers v. Fort Pitt Steel Casting*,
> 598 F.2d 1273, 1280 (3d Cir.1979) ("[T]he fact that the payment of
> monies is involved does not automatically preclude a finding of
> irreparable injury."); *see also, e.g., Teradyne, Inc. v. Mostek Corp.*, 797
> F.2d 43 (1st Cir.1986) (upholding a preliminary injunction issued to
> protect a potential damages remedy); *Foltz v. U.S. News & World Report*,
> 760 F.2d 1300, 1307–09 (D.C.Cir.1985) (holding that the "[i]rrevocable
> loss" of a cause of action for monetary recovery against an ERISA-
> covered pension plan would constitute irreparable injury for preliminary
> injunction purposes); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d
> Cir.1985) ("[E]ven where the ultimate relief sought is money damages,
> federal courts have found preliminary injunctions appropriate where it has
> been shown that the defendant 'intended to frustrate any judgment on the
> merits' by 'transfer[ring] its assets out of the jurisdiction.' " (citation
> omitted)); *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386
> (7th Cir.1984) (discussing four situations in which preliminary equitable
> relief is available because a damages remedy is "inadequate").

It is apparent that it is unlikely that PCFG will be around to pay any ultimate damages

award. Rather the only manner by which Black Mountain can be made whole for PCFG's's

breach of its obligation to deliver the shares is by granting the requested injunctive relief. There

is certainly no harm in requiring PCFG to comply with its clear contract obligations during the

pendency of this action. The Court will simply be compelling PCFG to do what it agreed to do

when it took Black Mountain's money. It is entirely appropriate for this Court to hold PCFG to

its word.

15

D.     Black Mountain Should Not Be Required to Post a Bond

Rule 65 of the Federal Rules of Civil Procedures states as follows in connection with the

issuance of a preliminary injunction:

> (c) Security.  No restraining order or preliminary injunction
> shall issue except upon the giving of security by the applicant, in
> such sum as the court deems proper, for the payment of such costs
> and damages as may be incurred or suffered by any party who is
> found to have been wrongfully enjoined or restrained.  No such
> security shall be required of the United States or of an officer or
> agency thereof.

Although the Rule is couched in mandatory language, the law is clear, however, that the

Court has discretion with respect to requiring or dispensing with the bond.  As the court stated in

*La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807, note 13 (S.D.N.Y. 1990):

> "While Rule 65(c) appears to be mandatory, courts may decline to require
> the posting of a security bond."

Similarly, as is set forth in 11A Wright, Miller and Kane, Federal Practice and Procedure, Sec.

2954 (1995 ed.):

> "Indeed, it has been held that the court may dispense with security
> altogether if the grant of an injunction carries no risk of monetary loss to
> the defendant."

*See also*:  *Doctor's Associates v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); *Kamine/Besicorp.*

*Allegany L.P. v. Rochester Gas & Electric Corp.*, 908 F. Supp. 1180, 1193 (W.D.N.Y. 1995)(the

court dispensed with a bond when granting a temporary restraining order noting that it did not

appear that the defendant would suffer any long term harm if it turned out that the restraining

order was wrongly granted); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir.

1974) *cert. denied*, 94 S. Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d 236 (1974)("[T]he district court

may dispense with security when there has been no proof of likelihood of harm to the party

enjoined."); *Fleet National Bank v. Trans World Airlines*, 767 F. Supp. 510, 519 (S.D.N.Y.

16

1991) (bond dispensed with when court believed movant acted in good faith and could not be liable to defendant).

Under the facts and circumstances in this case, there is no reasonable possibility that PCFG will suffer any monetary damages as a result of being compelled to comply with its contractual obligations. There is no likely possibility that Black Mountain will suffer any harm if the injunction is granted and Black Mountain obtains the stock to which it is entitled. The Court, therefore, should dispense with the requirement of the bond.

Conclusion

For the foregoing reasons, Black Mountain respectfully requests that the Court issue an order, pending final determination of this action, directing PCFG to deliver immediately 44,509,090 shares of its common stock, and to not require that Black Mountain post a bond.

Dated: New York, New York
      April 27, 2012

                        OLSHAN GRUNDMAN FROME
                        ROSENZWEIG & WOLOSKY LLP

By: _____
                        Jennifer L. Heil (JH 4290)
                        *Attorneys for Plaintiff Black Mountain*
                        *Equities, Inc.*
                        744 Broad Street, 16th Floor
                        Newark, New Jersey 07102
                        jheil@olshanlaw.com

                        Thomas J. Fleming
                        Park Avenue Tower
                        65 East 55th Street
                        New York, NY 10022
                        (212) 451-2300
                        tfleming@olshanlaw.com

17