UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLACK MOUNTAIN EQUITIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> PACIFIC GOLD CORP., <br><br> Defendant. | Docket No. 2:12-cv-01285-KM-CLW <br><br> Motion Day:   January 7, 2013 |
| PACIFIC GOLD CORP., <br><br> Counterclaim Plaintiff, <br><br> -against- <br><br> BLACK MOUNTAIN EQUITIES, INC., YA GLOBAL INVESTMENTS, L.P., YORKVILLE ADVISORS, LLC, TROY RILLO, and ADAM BAKER, <br><br> Counterclaim Defendants. | |

## COUNTERCLAIM-DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COUNTERCLAIMS

OLSHAN FROME WOLOSKY LLP
Thomas J. Fleming (admitted *pro hac vice*)
Jennifer L. Heil
*Attorneys for Plaintiff and Counterclaim Defendants*
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451-2300
tfleming@olshanlaw.com
jheil@olshanlaw.com

1913172-2

## Table of Contents

Page

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 2

    I    THE COURT SHOULD GRANT COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH SEVEN OF THE SECOND AMENDED COUNTERCLAIMS .......................................................... 2

        A.    The New Jersey Statutory Claims ................................................................. 2

        B.    Counts Three and Five Must Be Dismissed Because PCFG Has Not Successfully Alleged Improper Motive ................................................. 2

        C.    Counts Four and Six Must Be Dismissed Because the Indemnification Provision in the SPA Does Not Provide for Fee-Shifting in Disputes Between PCFG and YAG .......................................... 7

Conclusion .............................................................................................................................. 12

Table of Authorities

Page

CASES

*Angel Jet Services, LLC v. Borough of Woodland Park*,
  No. 10-cv-6459 (DMC)(MF), 2012 WL 5335830 (D.N.J. Oct. 26, 2012) ............................... 6

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*,
  228 F.3d 275 (3d Cir. 2000) ............................................................................................ 3

*Boardwalk Regency Corp. v. Unite Here Local 54*,
  No. 08-0016, 2009 WL 540675 (D.N.J. Mar. 3, 2009) ................................................... 4

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
  182 N.J. 210, 864 A.2d 387 (2005) ................................................................................ 3

*Capital Safety, Inc. v. State, Div. of Bldgs. and Construction*,
  369 N.J.Super. 295, 848 A.2d 863 (App. Div. 2004) ..................................................... 4

*DiCarlo v. St. Mary Hosp.*,
  530 F.3d 255 (3d Cir. 2008) ............................................................................................ 3

*Donnelly v. Option One Mortgage Corp.*,
  No. 11-7019(ES), 2012 WL 4490642 (D.N.J. Sept. 26, 2012) ....................................... 7

*Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*,
  457 F.3d 312 (3d Cir. 2006) ............................................................................................ 4

*First Jersey Nat. Bank v. Dome Petroleum, Ltd.*,
  723 F.2d 335 (3d Cir. 1983) .......................................................................................... 10

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ............................................................................................ 5

*Gonzalez-Santos v. Torres-Maldonado*,
  283 F.R.D. 61 (D.P.R. 2012) .......................................................................................... 2

*Hassler v. Sovereign Bank*,
  644 F. Supp. 2d 509 (D.N.J. 2009) ................................................................................. 6

*Hill v. Commerce Bancorp, LLC*,
  CIV. 09-3685 RBK/JS, 2011 WL 2293324 (D.N.J. June 8, 2011) ..................... 9, 10, 11

*Kare Distribution, Inc. v. Jam Labels and Cards LLC*,
  No. 09-00969 (SDW)(MCA), 2012 WL 266386 (Jan. 30, 2012) .................................. 6

Table of Authorities
(continued)

Page

*MacWilliams v. BP Products North America, Inc.*,
　No. 09-1844 (RBK/AMD), 2010 WL 445909 (D.N.J. Feb. 3, 2010)..........................6

*Mylan Inc. v. Smithkline Beecham Corp.*,
　No. 10-4809 (JAP), 2012 WL 603804 (D.N.J. Feb. 23, 2012)..................................6

*Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*,
　970 F.2d 273 (7th Cir. 1992) ...................................................................................4

*Wilson v. Amerada Hess Corp.*,
　168 N.J. 236, 773 A.2d 1121 (2001).....................................................................3, 4

*XL Specialty Ins. Co. v. Torchio Bros.*,
　No. 07-2330 (RMB), 2010 WL 744121 (D.N.J. Mar. 2, 2010).................................7

OTHER AUTHORITIES

23 Williston on Contracts § 63:22, at 513-14 (4th ed. 2002) ...........................................3

Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ...............................................................................1

This reply memorandum of law is submitted by counterclaim-defendants Black Mountain Equities, Inc. ("Black Mountain"), YA Global Investments, L.P. ("YAG"), and Yorkville Advisors, LLC ("Yorkville") (collectively, the "Black Mountain/YAG Parties") in further support of their motion under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for dismissal of Counts Two through Seven of the Second Amended Counterclaims (Docket # 38) filed by defendant and counterclaim-plaintiff Pacific Gold Corp. ("PCFG").

Preliminary Statement

PCFG has now requested that the Court dismiss without prejudice Counts Two and Seven of the Second Amended Counterclaims relating to the New Jersey Frivolous Litigation Statute. Counterclaim-defendants have spent considerable resources in defending these counts. As such, the Court should dismiss them *with prejudice*. Counts Three and Five, relating to alleged breaches of the implied covenant of good faith and fair dealing, amount to mere allegations that the counterclaim-defendants acted within the express terms of the YAG Warrant and the YAG Debenture, and nothing more. PCFG has not plausibly alleged improper motive with respect to the purported breaches, and thus has not stated claims. Because PCFG has not met its burden relating to the implied covenant of good faith and fair dealing claims, its claims for indemnification based on the alleged breaches also fail. Additionally, as the relevant indemnification provision does not contain a specific provision dealing with litigation *between the contracting parties*, the Court may not imply one here. Counterclaim-defendants therefore respectfully request that the Court dismiss Counts Two through Seven of the Counterclaims with prejudice.

<u>Argument</u>

I

### THE COURT SHOULD GRANT COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH SEVEN OF THE SECOND AMENDED COUNTERCLAIMS

A.  <u>The New Jersey Statutory Claims</u>

Having imposed upon counterclaim-defendants substantial legal costs, defendant PCFG now concedes that Counts Two and Seven of the Counterclaims are deficient relating to the New Jersey Frivolous Litigation Statute. It has chosen not to defend these claims, thereby also dismissing all outstanding claims against Troy Rillo and Adam Baker. Because of the considerable resources that counterclaim-defendants have expended in defending against Counts Two and Seven of the Counterclaims, the Court should dismiss them with prejudice. *See Gonzalez-Santos v. Torres-Maldonado*, 283 F.R.D. 61, 62-63 (D.P.R. 2012) (plaintiff's motion for voluntary dismissal of her claims against defendant would be granted with prejudice, rather than without prejudice, since action had been complex and pending for a long time and defendant had incurred vast amount of legal expenses).

The Counterclaims that remain at issue in this motion are Counts Three and Five, for alleged breach of the implied covenant of good faith and fair dealing, and Counts Four and Six, allegedly for indemnification for attorneys' fees and costs under the Securities Purchase Agreement ("SPA") and YAG Warrant. As explained in further detail below, these counts too should be dismissed.

B.  <u>Counts Three and Five Must Be Dismissed Because PCFG Has Not Successfully Alleged Improper Motive</u>

As discussed in counterclaim-defendants' opening brief, Counts Three and Five amount to mere allegations that the Black Mountain/YAG Parties acted within the express terms of the

2

1913172-2

contracts, and nothing more. PCFG has not alleged improper motive, and thus has not stated claims for breach of the implied covenant of good faith and fair dealing.

It is well established under New Jersey law that "[e]very party to a contract ... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224, 864 A.2d 387 (2005). While "a party's performance under a contract may breach ... [the] covenant [of good faith and fair dealing] even though that performance does not violate a pertinent express term," *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 245, 773 A.2d 1121 (2001), "the duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008).

Proof of "bad motive or intention" is essential to a cause of action for breach of the covenant of good faith and fair dealing. *Brunswick Hills*, 182 N.J. at 225, 864 A.2d 387. The party claiming a breach of the covenant "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* (quoting 23 Williston on Contracts § 63:22, at 513-14 (4th ed. 2002) (footnotes and internal quotation marks omitted)); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000); *Wilson*, 168 N.J. at 251, 773 A.2d 1121.

As the Supreme Court of New Jersey explained in *Wilson*, a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party. 168 N.J. at 251, 773 A.2d 1121 (internal quotation marks and citation omitted). "'Contract law does not require parties to behave altruistically toward each other; it does not

3

1913172-2

proceed on the philosophy that I am my brother's keeper.'" *Wilson*, 168 N.J. at 251, 773 A.2d 1121 (quoting *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992)).

In the context of contracts that vest unilateral discretion in one party, the New Jersey Supreme Court has explained:

> The fact that a discretion-exercising party causes the dependent party to lose some or all of its anticipated benefit from the contract ... is insufficient to establish a breach of contract by failing to perform in good faith.... [The dependent party must instead allege] bad motive in order to assert successfully a claim of breach of the implied covenant of good faith and fair dealing.

*Wilson*, 168 N.J. at 245-46, 249, 773 A.2d 1121 (citations omitted, emphasis added).

> A plaintiff may be entitled to relief in an action under the covenant if the defendant acts with ill motives and without any legitimate purpose to destroy the plaintiff's reasonable expectations. However, bad motive or intention is essential, and *an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.*

*Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) (internal quotations and citations omitted, emphasis added).

Therefore, because "a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party," a plaintiff cannot satisfy the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff. *Id.*; *see also, e.g., Capital Safety, Inc. v. State, Div. of Bldgs. and Construction*, 369 N.J.Super. 295, 301, 848 A.2d 863 (App. Div. 2004); *Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-0016, 2009 WL 540675, at *8 (D.N.J. Mar. 3, 2009). PCFG's allegations in Counts Three and Five amount to mere allegations that the Black

Mountain/YAG Parties acted within the express terms of the contracts and that PCFG was disadvantaged, but nothing more.

With respect to Count Three, PCFG claims that YAG's legitimate business decision to act within its rights and transfer the YAG Warrant to BME was made in bad faith because YAG "knew the YAG Warrant was worthless and unenforceable." (Opp. Br. at 9.) However, PCFG inherently cannot prove that the transfer of the YAG Warrant was done with improper motive because it is far from clear that the YAG Warrant was unenforceable at the time of transfer. Indeed, the Court stated in its November 28, 2012 Memorandum Opinion on the Motion for Preliminary Injunction in this case that "Black Mountain ... proposes an interpretation ... that is within the realm of possibility." (Memorandum Opinion at 9.) PCFG offers no precedent for its novel theory that the holder of securities becomes liable for selling them to another party who has reached its independent conclusion that the shares have value. There is no suggestion, moreover, that YAG made any warranty regarding the securities or did anything to induce the sale. PCFG therefore cannot plausibly allege that the transfer of the YAG Warrant to BME was done with an improper motive; rather, the transfer was the product of a legitimate business decision. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (to prevent dismissal, all civil complaints must set out sufficient factual matter to show that the claim is *facially plausible*). Count Three should therefore be dismissed.

PCFG has also failed to allege improper motive with respect to Count Five, wherein PCFG claims that YAG and Yorkville breached the covenant of good faith and fair dealing by timing sales of PCFG stock to lower the share price of PCFG, enabling YAG to receive more shares when exercising its conversion rights under the YAG Debenture. As discussed in counterclaim-defendants' opening brief, neither the SPA nor the Debenture impose any trading

5

1913172-2

restrictions on YAG, and the prospectus filed with the SEC under which it sold its shares explicitly anticipated a potential lowering of its share price resulting from YAG's sales. At most, PCFG alleges that YAG's discretionary sales disadvantaged PCFG. This is insufficient to demonstrate the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing. *See Angel Jet Services, LLC v. Borough of Woodland Park*, No. 10-cv-6459 (DMC)(MF), 2012 WL 5335830, at *5 (D.N.J. Oct. 26, 2012) ("it does not satisfy the improper motive element of a good faith performance claim for a plaintiff to allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement, and that this decision worked to the disadvantage of the complaining party"); *Mylan Inc. v. Smithkline Beecham Corp.*, No. 10-4809 (JAP), 2012 WL 603804, at *6-7 (D.N.J. Feb. 23, 2012) (dismissing claim of breach of the covenant of good faith and fair dealing where governing agreement specifically allowed the complained-of conduct and plaintiff merely alleged that it suffered economic disadvantage as a result); *Kare Distribution, Inc. v. Jam Labels and Cards LLC*, No. 09-00969 (SDW)(MCA), 2012 WL 266386, at *5 (Jan. 30, 2012) (dismissing counterclaim of breach of the covenant of good faith and fair dealing because no improper motive shown where defendant failed to show that plaintiff was dishonest about its actions or that plaintiff's performance was a pretext to terminate the contractual relationship or drive defendant out of business); *MacWilliams v. BP Products North America, Inc.*, No. 09-1844 (RBK/AMD), 2010 WL 445909, at *6 (D.N.J. Feb. 3, 2010) ("a party that is expressly granted unilateral discretion does not act in bad faith by exercising that discretion to create a result within the range of risks contemplated by the parties at the time of the agreement"); *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) ("it does not satisfy the improper motive element of a good faith performance claim for a plaintiff to allege merely that its

contractual partner exercised the discretion expressly afforded to it under the agreement 'to serve [its own] financial interests or to 'maximize [its] profits'"); s*ee also Donnelly v. Option One Mortgage Corp.*, No. 11-7019(ES), 2012 WL 4490642, at *9-10 (D.N.J. Sept. 26, 2012) (dismissing claim of breach of covenant of good faith and fair dealing where plaintiff's allegations concerning defendant's motives were "nothing more than conclusory statements devoid of factual support."); *XL Specialty Ins. Co. v. Torchio Bros.*, No. 07-2330 (RMB), 2010 WL 744121, at *6 (D.N.J. Mar. 2, 2010) (dismissing claim of breach of covenant of good faith and fair dealing where plaintiff did not set forth specific facts showing that there was bad motive or intention).

Counts Three and Five must therefore be dismissed.

C. Counts Four and Six Must Be Dismissed Because the Indemnification Provision in the SPA Does Not Provide for Fee-Shifting in Disputes Between PCFG and YAG

As explained above, PCFG has not stated any claim that would trigger the indemnification clause in Section 8(b) of the SPA. Once the Court dismisses Counts Three and Five, the claims for indemnification based on these nonexistent breaches must also be dismissed.

These claims suffer other defects. As set forth in more detail in counterclaim-defendants' opening brief, New Jersey courts have long rebuffed efforts to transform these kinds of indemnification provisions into fee-shifting clauses. Under settled law, Section 8(b) entitles PCFG to indemnification only from a *third party* suit arising out of the SPA. Despite PCFG's protestations to the contrary, it is clear that Section 8(b) of the SPA does not contain a specific provision under which fees are awarded to a prevailing party in any dispute or litigation *between PCFG and YAG*. The indemnification provision in Section 8(b) of the SPA states:

> In consideration of the Company's execution and delivery of this Agreement, and in addition to all of the Buyer's other obligations under this Agreement, the Buyer shall defend, protect, indemnify and hold

7

> harmless the Company and all of its officers, directors, employees, and agents (including, without limitation, those retained in connection with the transactions contemplated by this Agreement) (collectively, the <u>Company Indemnitees</u>") from and against any and all Indemnified Liabilities incurred by the Indemnitees or any of them as a result of, or arising out of, or relating to (a) any misrepresentation or breach of any representation or warranty made by the Buyer(s) in this Agreement, instrument or document contemplated hereby or thereby executed by the Buyer; (b) any breach of any covenant, agreement or obligation of the Buyer(s) contained in this Agreement, the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby executed by the Buyer; or (c) any cause of action, suit or claim brought or made against such Company Indemnitee based on material misrepresentations or due to a material breach and arising out of or resulting from the execution, delivery, performance or enforcement of this Agreement, the Transaction Documents or any other instrument, document or agreement executed pursuant hereto by any of the parties hereto. To the extent that the foregoing undertaking by each Buyer may be unenforceable for any reason, each Buyer shall make the maximum contribution to the payment and satisfaction of each of the Indemnified Liabilities, which is permissible under applicable law.

(Section 8(b), SPA, Docket #50, Fleming Declaration Exhibit 2).

    Looking at the indemnification clause section by section, Section 8(b)(a) is designed to cover liabilities arising out of any breach of YAG's *representations and warranties*. YAG's representations and warranties are covered in Section 2 of the SPA. They generally include representations regarding YAG's status as a buyer of PCFG's securities, including, for example, statements that YAG's is an "accredited investor" under the securities laws and is an entity that validly exists and is not prohibited from purchasing such securities. The types of liabilities contemplated by Section 8(b)(a) include inquiries by the SEC into YAG's purchases of PCFG securities. If, for example, PCFG were required to pay a fine to the SEC as a result of YAG's breach of the representations and warranties, that liability would be covered by the indemnification provision.

    Section 8(b)(b), the section under which PCFG brings its indemnification counterclaims, is designed to cover liabilities arising out of any breach by YAG of any *covenants or obligations*

8

in the SPA. The covenants are set forth in Section 4 of the SPA and include responsibilities relating to rights of first refusal. The obligations are generally covered in Section 6 of the SPA and include requirements that YAG execute the transaction documents and deliver the purchase price for the relevant debentures and warrants. The types of liabilities contemplated by Section 8(b)(b) include situations where YAG's breach of a covenant or obligation would cause PCFG to breach its obligations to a third party. For example, if YAG were not to timely deliver the purchase price to PCFG, PCFG would likely not be able to follow its plan to use the proceeds from the sale of the debentures to repay all outstanding loans from Palisades Master Fund LP, as contemplated in Section 4(d) of the SPA, and liabilities would likely arise.

Section 8(b)(c) is designed to cover liabilities arising out of any *litigation* brought by any third parties against PCFG relating to the SPA. PCFG correctly notes that Sections 8(b)(b) and 8(b)(c) have different language intended to cover different circumstances. As explained above, Section 8(b)(b) is intended to cover liabilities relating to a breach of a covenant or obligation arising when there *is no litigation* filed by third parties. Section 8(b)(c) is intended to cover liabilities arising where there *is litigation* filed by third parties. It is that simple. There is no clause that is superfluous here. There is, however, no language anywhere in Section 8 specifically providing for fee shifting in *disputes between the contract parties*. As discussed at length in counterclaim-defendants' opening brief, New Jersey law dictates that the Court may not imply such a provision. *See Hill v. Commerce Bancorp, LLC*, CIV. 09-3685 RBK/JS, 2011 WL 2293324, at *5-9 (D.N.J. June 8, 2011). Therefore, PCFG's indemnification claims must fail.

PCFG argues that YAG and Yorkville's own indemnification counterclaims prevent them from now moving to dismiss Counts Four and Six of PCFG's Counterclaims. However, BME, YAG, and Yorkville are imminently moving to dismiss their complaint and counterclaims.

9

1913172-2

Therefore, the issue is moot. Interestingly, however, PCFG's Answer to YAG and Yorkville's indemnification counterclaims (Docket #37) denies the very theory they are advancing in opposition to the instant motion. Therefore, the Court should consider those denials binding judicial admissions stating that the indemnification language is inapplicable here to suits between the parties with respect to their attorneys' fees and costs.

PCFG relies heavily on *First Jersey Nat. Bank v. Dome Petroleum, Ltd.*, 723 F.2d 335, 339 (3d Cir. 1983), in arguing that Section 8(b) covers indemnification between the parties in this case. However, the indemnification clause in *Dome* included language that is absent in Section 8(b). The *Dome* indemnification clause specifically provided for fee-shifting with respect to lawsuits between the parties to the agreement: "[Defendant Dome] hereby covenants and agrees to indemnify and hold [Plaintiff First Jersey] harmless from and against any and all claims, actions, judgments, damages, losses, liabilities, costs and expenses of any nature whatsoever (including without limitation attorney's fees), arising directly or indirectly from, out of, or incident to this Agreement." 723 F.2d at 339. However, Section 8(b) does not include such language, and is much more similar to the indemnification clause at issue in *Hill*, which stated:

> Indemnification by Commerce. Commerce shall fully indemnify InterArch against, and defend and hold it, its officers, directors, employees, agents and other representatives harmless from any and all liability and related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by InterArch and its officers, directors, employees, agents and other representatives, which may arise out of acts performed or omitted in connection with Projects and this Agreement (i) by InterArch, its officers, directors, employees, agents and other representatives, except to the extent such liability or expense arises out of its or their own gross negligence or willful misconduct, or (ii) by Commerce or any of its officers, directors, employees, agents or other representatives.

*Hill*, 2011 WL 2293324, at *2.

10

The *Hill* court contrasted the *Dome* indemnification clause from the clause in *Hill*, saying:

> The provision at issue in *Dome* differs significantly from the language at issue here. In *Dome*, the defendant clearly agreed to indemnify the plaintiff for more than third-party liabilities. The provision expressly applied to any losses, costs, or attorneys' fees arising directly or indirectly from the parties' agreement. The Third Circuit found that attorneys' fees expended to enforce the agreement qualify as a "loss" arising from the agreement. Id. at 340–41. In contrast, the Indemnification Provision here applies only to attorneys' fees "related" to "liabilities" incurred by InterArch as a result of Commerce's acts or omissions. As noted above, Commerce's alleged breach is not a "liability" for InterArch but, to the contrary, a potential source of recovery. Thus, the Third Circuit's holding in *Dome* does not apply here because the Indemnification Provision does not include similar all-encompassing language.

*Hill*, 2011 WL 2293324, at *9.

The same is true here. Section 8(b) of the SPA does not include all-encompassing language that specifically covers claims between the parties. Therefore, the American Rule applies, and the parties must bear their own counsel fees. (*See* case discussions on page 11 of counterclaim-defendants' opening brief.) Counts Four and Six must therefore be dismissed.

11

1913172-2

<u>Conclusion</u>

For the foregoing reasons and for the reasons set forth in their opening brief, the Black Mountain/YAG Parties respectfully request that the Court grant their motion to dismiss Counts Two through Seven of the Second Amended Counterclaims.

Dated: New York, New York
December 21, 2012

OLSHAN FROME WOLOSKY LLP

By: *(signature)*
Jennifer D. Heil
*Attorneys for Black Mountain Equities, Inc., YA Global Investments, L.P., Yorkville Advisors, LLC, Troy Rillo, and Adam Baker*
744 Broad Street, 16th Floor
Newark, New Jersey 07102
jheil@olshanlaw.com

Thomas J. Fleming
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451-2300
tfleming@olshanlaw.com

1913172-2